MICHAEL BAILEY
United States Attorney
District of Arizona
MONICA EDELSTEIN
Arizona State Bar No. 023098
RAYMOND K. WOO
Arizona State Bar No. 023050
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: monica.edelstein@usdoj.gov; raymond.woo@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>1. Joseph Menaged,<br><br>Defendant. | No. CR- 19-0352-01-PHX-DLR<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, Joseph Menaged, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the indictment charging the defendant with a violation of 18 United States Code (U.S.C.) § 371, Conspiracy to Commit Bank Fraud, a Class E felony offense.

2. **MAXIMUM PENALTIES**

    a.    A violation of 18 U.S.C. § 371, is punishable by a maximum fine of $250,000, a maximum term of imprisonment of 5 years, or both, and a term of supervised release of 3 years. A maximum term of probation is five years.

    b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

a. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant shall be sentenced to time served on Count 1 of the indictment.

b. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that, before the sentencing hearing, the defendant shall be current on any outstanding bank loans, fees, and delinquent property taxes for the New York and Miami properties identified in Count 1. The parties recognize there could be a significant delay in sentencing so that Defendant can comply with his obligation under the plea. After the defendant has entered into this plea agreement, the United States shall withdraw its motion for interlocutory sale of the properties without prejudice. Before the sentencing hearing, the defendant specifically agrees to pay $350,000 to the Receiver assigned to the DenSco case through counsel Ryan W. Anderson, Esq., Guttilla Murphy Anderson, 5415

E. High Street, Suite 200, Phoenix, Arizona 85054. The defendant agrees that the Receiver can use these funds to repay DenSco victims. The United Sates shall be permitted to withdraw from the plea agreement if defendant fails to satisfy this stipulation. In the event the plea is withdrawn, the United States shall be free to refile any forfeiture claims relating to the properties.

   c. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the acceptance of this plea is contingent on co-defendant Stephen Brown's acceptance of a deferred prosecution agreement. The defendant understand that if his co-defendant fails to accept the deferred prosecution agreement, or if this plea is rejected for any reason by the Court, the United States will not be bound by this agreement and shall be permitted to withdraw from the plea.

   d. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

   e. Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of

responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

   a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges: Counts 2-7 and the forfeiture allegations of the indictment.

   b.     The United States shall withdraw its Motion for Interlocutory Sale related to the subject properties. (Doc. 44)

   c.     This office shall not prosecute the defendant for any offenses committed by the defendant, and known by this office.

   d.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

   a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

   b.     If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used

against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7.    DISCLOSURE OF INFORMATION**

a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1)    criminal convictions, history of drug abuse, and mental illness; and

        (2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8. ELEMENTS

### Conspiracy to Commit Bank Fraud

In or about June 2012 through September 2015, in the District of Arizona, and elsewhere:

1. There was an agreement between two or more persons to commit at least one crime as charged in the indictment;

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

## 9. FACTUAL BASIS

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

On or about June 1, 2012, the defendant entered into a purchase agreement with Extell West 57th Street, LLC for the purchase of Unit 42C at 157 West 57th Street, New York, New York ("Unit 42C") for $3,225,120.00. On or about March 22, 2013, the defendant entered into a purchase agreement with Tower 3315, LLC for the purchase of Unit 9D at 3315 Collins Avenue in Miami Beach, Florida ("Unit 9D") for $2,600,000.00. On or about April 11, 2013, the defendant entered into a purchase agreement with Tower 3315, LLC for the purchase of Unit 9C at 3315 Collins Avenue in Miami Beach, Florida ("Unit 9C") for $5,000,000.00. In an effort to finance a large portion of each purchase, the defendant, and others at his direction, including co-defendant Stephen Brown, sought financing from federally insured financial institutions including JPMorgan Chase, Citibank, N.A, PNC Bank, Bank United, and Morgan Stanley.

The defendant, with the assistance of others, prepared and submitted to the banks a

1  document titled "promissory note," that misrepresented the source of the defendant's
2  income. In March 2015, the defendant submitted a loan application falsely indicating that
3  he was self-employed as a real estate consultant/investor. In or about September 2015, the
4  defendant submitted another loan application to Morgan Stanley that falsely indicated that
5  he was self-employed. That same month, the defendant submitted a second loan
6  application to Bank United falsely claiming that he was self-employed with Y.S.M.'s
7  company AFH for eight years. As a result of these misrepresentations, the defendant
8  obtained mortgages from Bank United and Morgan Stanley and finalized the purchase of
9  all three properties.
10  b.   The defendant shall swear under oath to the accuracy of this statement and, if the
11  defendant should be called upon to testify about this matter in the future, any intentional
12  material inconsistencies in the defendant's testimony may subject the defendant to
13  additional penalties for perjury or false swearing, which may be enforced by the United
14  States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

16  I have read the entire plea agreement with the assistance of my attorney. I
17  understand each of its provisions and I voluntarily agree to it.
18  I have discussed the case and my constitutional and other rights with my attorney.
19  I understand that by entering my plea of guilty I shall waive my rights to plead not guilty,
20  to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to
21  present evidence in my defense, to remain silent and refuse to be a witness against myself
22  by asserting my privilege against self-incrimination, all with the assistance of counsel, and
23  to be presumed innocent until proven guilty beyond a reasonable doubt.
24  I agree to enter my guilty plea as indicated above on the terms and conditions set
25  forth in this agreement.
26  I have been advised by my attorney of the nature of the charges to which I am
27  entering my guilty plea. I have further been advised by my attorney of the nature and range
28

of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

1/30/20
Date

Joseph Menaged
Defendant

- 8 -

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

1-30-20
Date

LEE STEIN
Attorney for Joseph Menaged

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

MICHAEL BAILEY
United States Attorney
District of Arizona

1-30-2020
Date

MONICA EDELSTEIN
RAYMOND WOO
Assistant U.S. Attorneys

- 9 -

1
2
## ACCEPTANCE BY THE COURT

3
4  _____        _____
   Date                       HON. DOUGLAS L. RAYES
                              United States District Judge
5
6
7
...
28